### BOYCE v. LAKE.

1. In action on a note the answer alleged that the plaintiff was a lunatic; at the trial plaintiff's attorneys admitted this allegation and moved, without previous notice, for the appointment of a guardian *ad litem* for the plaintiff, and the appointment was made. *Held*, that the amendment was within the discretion of the presiding judge, and this discretion was properly exercised.
2. It is only when the defendant so fully admits the plaintiff's case as to entitle plaintiff, in the absence of affirmative defence, to his judgment, that the defendant is entitled to open and reply.
3. The lapse of twenty years raises a presumption of payment as to sealed notes and bonds, which, though not a presumption of law, is a presumption of fact that has acquired an artificial force subject to be rebutted by such facts only as would revive an unsealed note barred by the statute of limitations. There must be in rebuttal something more than mere belief deduced from the weight of testimony; the stay law, the war and the lunacy of plaintiff are not circumstances sufficient to rebut this presumption.

---

Before KERSHAW, J., Newberry, November, 1880.

The case is fully stated in the opinion.

Messrs. *Suber & Caldwell* and *J. Y. Culbreath*, for appellants.

Mr. *J. H. Rion*, contra.

July 15, 1882. The opinion of the court was delivered by

Mr. Chief Justice Simpson.—In this case the plaintiff brought action upon a joint and several sealed note executed March 10, 1857, by E. P. Lake and James S. Spearman for $815.77, payable twelve months after date, to Chancellor Job Johnstone, or bearer or order, with a credit indorsed of $500 on March 9, 1858. Chancellor Johnstone, who had been the guardian of the plaintiff, died in 1862, and Carver Randall became his successor. This note fell into the possession of Randall, and by him was turned over to the plaintiff, who attained her majority in November, 1865, as a part of her estate.

Under these circumstances the plaintiff, on August 17, 1879, brought this action against Lake and Elizabeth Spearman, the executrix of James S. Spearman, who had died in 1878. The case came on for trial at the November term, 1880, for Newberry County. The defendants admitted the execution of the note, but insisted that the plaintiff was a lunatic and incompetent therefore to sue; also averred that the note being joint could not be sued, as to Spearman, the surety, he being dead, and relied on the lapse of time as evidence of payment.

At the trial it was admitted that the plaintiff was a lunatic and had been since 1868, and the counsel of plaintiff moved without previous notice for the appointment of a guardian *ad litem*, which motion was granted, against the protests of the defendants, and Silas Johnstone, Esq., was appointed. The defendants insisted that having admitted the execution of the note, they were entitled to open and reply on the trial. This was overruled. The case then went to trial, the defendants relying principally upon the defence of payment arising out of the lapse of time, twenty years and some months having elapsed since the credit of the $500, and the estate of Spearman having been proved to be solvent all this time.

On the question of payment the judge charged that the presumption of payment of a sealed note arising from the lapse of twenty years from its maturity, or new promise or part payment, can be rebutted by circumstances without positive proof of non-payment. " That the stay law of 1861–66, and the

lunacy of the plaintiff, were circumstances to be taken into consideration by them in determining whether the note had been paid or not." That from all the facts as brought out in the case, they should base their verdict upon their belief whether the note as a matter of fact had been paid or not. His Honor refused to charge that the presumption of payment arising from the lapse of twenty years could be rebutted only by positive proof of non-payment.

The jury found for the plaintiff the sum of $817.52.

The appeal involves three questions of law: 1st. Was it error in the judge to allow the amendment at the trial as to the appointment of the guardian *ad litem?* 2d. Were the defendants entitled to open and reply? 3d. Was it error to charge that the presumption of payment arising from the lapse of twenty years could be rebutted by proof of facts and circumstances, such as the stay law, the war, the lunacy of the plaintiff, etc., without positive proof of non-payment?

The motion to amend by the appointment of a guardian *ad litem* was made upon the facts appearing in the pleadings. The lunacy of the plaintiff was set up in defendant's answer, and the necessity for the guardian *ad litem* appeared from that fact, which was admitted by plaintiff's counsel. There was no necessity for affidavits as to this fact, or as to any matter *dehors* the record affecting this motion. The defendants were not taken by surprise, nor did any right of theirs demand delay, nor could they be prejudiced by prompt action as to this matter.

Section 196 of the Code provides "that the court may before or after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading, process, or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of the party, or mistake in any other respect." . . . This gives the court a wide latitude as to amendments, and while the power should not be exercised indiscriminately or to the surprise and prejudice of opposing parties, nor generally without giving the defendant the opportunity to resist and to answer the pleadings as amended, yet this matter must be left somewhat to the discretion of the presiding judge,

and this court will not disturb the exercise of that discretion unless manifest injustice has been done. In this case we can see no reason whatever why the motion was objectionable because made without previous notice, or why time should have been given to answer. The material facts of the case, those upon which the matters at issue depended, were in no way altered by this amendment, and no new facts were needed by way of reply nor was there any surprise to the defendants. We think the power to amend was authorized by Section 196 of the Code, and that it was properly exercised here by the circuit judge.

The second ground of appeal is equally untenable. The 49th rule of the Circuit Court entitles the defendant to open and reply when he admits the plaintiff's whole case; when the admission is so full, as upon that alone in the absence of other defense, the plaintiff would be entitled to judgment. It will be observed that the admission here was not of this full character. It is true the execution of the note sued on was admitted, but the admission stopped at that point. The answer denies the right of plaintiff to sue, because a lunatic, and it averred that Spearman's estate could not be sued. In these denials there were involved questions both of fact and of law material to the plaintiff's case, not admitted. The 49th rule of the Circuit Court, therefore, does not apply.

This brings us to the consideration of the third and last ground of appeal, which presents the real question in the case. As to the character of the testimony necessary to overthrow the presumption of payment of a sealed note, which, it is admitted, the lapse of twenty years raises, the Judge seems to have laid down the rule that this was a question of belief on the part of the jury, and depended, as other facts, upon the weight of the testimony. That the lapse of twenty years would presume payment; but, after that period, this was an open question for the jury, the burden being upon the plaintiff to show to the satisfaction of the jury that the note had not been paid, which fact the jury was to determine as they would the truth of any other alleged fact, to wit, by the weight of the testimony bearing upon that question. In other words, the only

effect of the lapse of twenty years is to change the position of the parties as to the question of payment.

Ordinarily and within the twenty years, the possession of the note by the plaintiff entitles him to judgment, unless the defendant shows payment. After the twenty years the burden is shifted, and the plaintiff is then required to show non-payment, or he will fail in his suit, which fact the Judge held was a question of belief by the jury, dependant upon the force and effect of the whole testimony, and requiring no special evidence—but that it did not require positive proof of non-payment.

This is a very important question, and demands the gravest consideration of its underlying principles and of the decided cases affecting it. Until 1870 our statute of limitations, the statute of James I., made of force here, did not embrace sealed notes, nor was there any positive limitation here or in England as to such instruments or as to bonds. The seal was supposed to give such papers peculiar force and value, and to impart to them peculiar vitality. This idea, however, has since been exploded, and now, in this State, such instruments stand on the same plane in almost every respect with unsealed contracts.

In all civilized countries where the law is administered as a science having reference to the peace, quiet, and progress of society, as well as to the protection of individual rights, it has been thought wise that there should be some limit to litigation, some boundary beyond which contests or matters open to contests should be regarded as settled. Hence, early in England and in this country, in cases outside of the statute, the courts had resort to presumption to take the place, in many cases of evidence and frequently of belief, as a general common law principle. It was said by Lord Erskine, in *Hillary* v. *Walter*, 12 *Ves.*, 267, " Mankind, from the infirmity and necessity of their situation, must, for the preservation of their property and rights, have recourse to some general principle to take the place of individual and specific belief."

In the absence of positive statutory limitation as to sealed notes and bonds, they were early brought under the operation

of this principle, and the doctrine that twenty years would presume payment firmly established, Mr. Angel says: "By analogy to the statute of limitations, an artificial presumption has long been established, that when payment of a bond or other specialty was not demanded for twenty years, and there has been no circumstance to show that it was still *acknowledged* to be in existence, the jury are to presume payment at the end of twenty years. This doctrine has been so often recognized that it is not requisite to cite any of the countless authorities to sustain it." *Angel Lim.,* § 93.

This doctrine, for the same reason that originated it, as to the first class of cases to which it was referred, has been applied to various other classes. Thus, in *Bowers* v. *Newman,* 2 *Mc-M.* 486, an executor's assent to a legacy of freedom to a slave was presumed from the lapse of time; and in *Miller* v. *Reigne,* 2 *Hill,* 592, a deed of manumission to a slave under the act of 1800 was presumed. Lapse of time will presume a deed, grant, or any conveyance necessary to complete title to one in possession. *Gray* v. *Bates,* 3 *Strob.* 500. Letters of administration will be presumed, although the evidence is directly to the contrary; *Willingham* v. *Chick,* 14 *S. C.* 103; and there are countless cases where the payment of bonds has been presumed under similar circumstances.

As was said by Chancellor Harper in *Riddlehoover* v. *Kinard,* 1 *Hill Ch.* 380, "These presumptions are not founded upon *actual belief.*" The belief may in fact be distinctly the other way, yet the presumption exists. Judge Wardlaw, in the case of *Stover* v. *Duren,* 3 *Strob.* 450, conveys the idea of the force and effect of this principle better than can be found elsewhere, and we copy his exact language. He says: "The subject of presumptions is a good deal confused by the various terms which have been used to distinguish the different kinds. The presumption of payment, which, in reference to debts not embraced by the statute of limitation, arises after the lapse of twenty years, is not a presumption of law, that is, a rule which the Court itself may apply, but is a presumption of fact, recognized by the law, from which a conclusion ought to be deduced by a jury. It is, however, one of those strong

presumptions which shift the burden of proof, which, from frequent occurrence, have become familiar to the Courts, and which, being constantly recommended to juries from motives of policy, have acquired an artificial force, and become as important as presumptions of law. Although the Court itself cannot make such presumption, a new trial will usually be granted if a jury disregard it. Lord Ellenborough, in *Williaume* v. *Gorges*, 1 *Camp.* 217, thought that, after the lapse of twenty years, the presumption that a judgment had been paid was not rebutted by the circumstances of the absence of the defendant and his insolvency, and, therefore, he directed the jury to find for the defendant."

Judge Wardlaw said, further: "But, when by the expiration of full twenty years, the presumption of payment has acquired an artificial force, so that it stands in the *place of belief*, an admission that the payment has not in fact been made cannot of itself destroy the effect which considerations of policy have given to a certain period of time, whether payment has or has not been made." Chancellor Harper said in *Riddlehoover* v. *Kinard, supra:* "The lapse of twenty years is sufficient to raise the presumption of a grant from the State, of the satisfaction of a bond, mortgage, or judgment, of the grant of a franchise, or the payment of a legacy, or almost anything else that is necessary to quiet titles to property. After twenty years a bill of review will not lie. This is the general equitable bar."

Now, while is is true that cases may be found among the decisions in our own State and elsewhere in which it is stated in a general way that this presumption may be rebutted by any circumstances showing non-payment, yet, in the face of these strong opinions, pronounced by such distinguished jurists as Wardlaw, and Harper, and Lord Ellenborough, and in the absence of a statement of the distinct character of those circumstances, we cannot but conclude, notwithstanding the other cases referred to, that this presumption, though rebuttable, has a much stronger foothold than to be overthrown by a mere balance of probabilities or by an adverse conclusion or belief deduced simply from the weight of testimony. Such a pre-

sumption is not founded simply upon belief. It is based upon public policy and necessity, and is frequently in direct opposition to belief. It was originally admitted in analogy to the prevailing statute of limitations, and in considering admissions which rebut it, the same principles are applicable as in considering admissions which take a case out of the statute.

But when, by the expiration of full twenty years, the presumption of payment has acquired an artificial force, so that it stands in place of belief, it should not be overthrown simply by a contrary belief deduced from circumstances. This would fritter the doctrine away and render it useless, leaving sealed notes and bonds always open. The better opinion seems to be that these circumstances should be accompanied with some acknowledgment by the debtor of an existing liability, as that expressed in the quotation from Angel, *supra*, where he says: "And there have been no circumstances showing that it was still *acknowledged* to be in existence." And as that found in the opinion of Judge Wardlaw, *supra*, where he says: "An admission simply that it has not been paid will not be sufficient unless it be an admission amounting to an acknowledgment of a subsisting liability like that which would renew a debt barred by the statute." Or, as was strongly expressed by Chancellor Harper, in *Riddlehoover* v. *Kinard*, *supra*, where he said: "Presumptions must be made against the well-known truth of the fact. If twenty years have elapsed without payment of interest, or any *acknowledgment* of a bond, we must presume it paid, notwithstanding the fullest conviction that it never has been paid." In *McQueen* v. *Fletcher*, 4 *Rich. Eq.*, 152, the court held that in considering admissions relied on to rebut the presumption of payment in such case, the same principles are applicable which apply when admissions are relied on to take a case out of the statute of limitations. "When an acknowledgment has been made in writing by the debtor charging him in direct terms, or by his agent, or if there has been a part payment, or part satisfaction of interest then due, the action must be brought in twenty years next after the time of such acknowledgment, part payment, or part satisfaction. But such special matter must be replied, and in confession and avoidance." *Best Presump.*, § 188.

April Term, 1882.

Our conclusion is that the lapse of twenty years raises a presumption of payment as to sealed notes and bonds, which, though not a presumption of law, and therefore not conclusive, yet is a presumption of fact which has acquired an artificial force; subject to be rebutted, it is true, but the facts relied on for this rebuttal must be stronger than mere belief deduced from the weight of testimony being on that side. They must be of a character which would revive an unsealed note barred by the statute of limitations. We think this follows from the principles laid down by Judge Wardlaw and Chancellor Harper in the cases referred to and in the case of *Williaume* v. *Gorges,* where Lord Ellenborough directed a verdict for the defendant when the proof was that the debtor had been absent and insolvent. In the case before the court the circumstances as to the belief were no stronger than those before Lord Ellenborough. He must have thought that something more was necessary than simply a belief on the part of the jury of nonpayment.

It is the judgment of this court that the judgment of the Circuit Court be reversed on the last ground of appeal, and that the case be remanded for a new trial.